CHRISTOFANO EPISCOPO and TERESA EPISCOPO, his wife, SAVINO CAPPIERLLO and RICHETTA CAPPIERLLO, his wife,

*vs.*

PETER C. OLIVERE and JOSEPH MONHIELLO.

*New Castle, July 31, 1926.*

*John W. Brady*, for complainants.

*Philip L. Garrett*, for defendants.

THE CHANCELLOR. The bill complains that the defendants keep and store motor trucks, at least three of which are of five ton capacity and others of smaller capacity, in a building used as a bottling works which adjoins the residence of one of the complainants and his wife on one side and of another complainant and his wife on the other side; that one of the residences is removed only eight feet from the bottling works building and the other is separated therefrom by a partition wall; that the building occupied by the defendants is set back from the curb line of the street at a greater distance than are the residences of the complainants so that an open area in front of the bottling works exists between the porches and the front portions of the complainants' residences; that some of the trucks are stored in the bottling works and some in the open area; that some of the trucks are used daily to collect ashes and rubbish in the city of Wilmington and all of them are at times used in hauling substances which leave in and about the premises dirt,

filth and possibly disease germs; that the defendants through their employees, at a very early hour in the morning before the usual time of rising, in the course of preparing and starting the trucks for their daily service and use, make many loud noises; that this condition frequently prevails at night; and upon one or two days of every week the said employees make loud and objectionable noises repairing the trucks; and that by reason of the noise and the noxious fumes, odors, grease, waste, etc., thus occasioned, the residences of the complainants are rendered uncomfortable, undesirable, unsanitary and dangerous and practically unendurable as residences.

Affidavits have been filed in support of and against the allegations of the bill. One of the complainants has a large family of children, and it appears that the motors, with their customary explosions and backfiring, are tuned up as early as half past five in the morning disturbing the rest and comfort of the adjoining residents.

"Noise, which constitutes an annoyance to a person of ordinary sensibility to sound, such as materially to interfere with the ordinary comfort of life, and impair the reasonable enjoyment of his habitation, is a nuisance to him." *Davis v. Sawyer*, 133 *Mass.* 289, 43 *Am. Rep.* 519.

"Noise alone," says Berry, Vice-Chancellor in the recent case of *Peragallo v. Luner*, (*N. J. Ch.*) 133 *A.* 543, "may constitute a nuisance; but in determining whether it is a nuisance, the character and volume, and the time, place, and duration of its occurrence, and the locality must be considered."

That automobiles leaving and entering a garage and the noise consequent upon the repairing thereof may constitute a nuisance, dependent upon the time, place and circumstance of their operation and repair, impliedly is recognized by the Supreme Court of this State in *Myers v. Fortunato*, 12 *Del. Ch.* 374, 110 *A.* 847.

The evidence supplied by the affidavits is sufficient to warrant the view that at this stage of the case the practice of the defendants in creating a disturbance next to the residences of the complainants must stop pending a further and fuller hearing.

It may not be material to observe, yet the fact is that it will neither ruin nor materially injure the defendants in their business to require them to cease converting the open area between the porches and front portions of the complainants' dwellings, in front

of the defendant's premises, into an unroofed garage where ash and rubbish-gathering trucks are "tuned up" in the early morning hours, repairs are made to them in the daytime with the customary banging and hubbub that usually attend such work, and where they are run in at night or during the evening when the adjoining families are entitled to enjoy the peace and quiet of their homes. The situation is particularly aggravated by the circumstance that during the heat of the present summer days, windows need to be opened and the porches are desired to be used.

I do not, of course, at this preliminary stage assume to finally determine the facts against the defendants. Enough is shown, however, to justify the issuance of a restraining order pending a further inquiry.

Some question has been raised concerning the propriety of employing the preventive process of equity to restrain the alleged nuisance before its existence has been established at law. I do not feel called upon to enter upon a general consideration of the law which deals with that question, because here we are concerned only with the propriety of temporary relief which may well be granted even though the view should be that in the end the case might turn out to be one where the Chancellor ought to withhold a final injunction until the injury has been established at law. *Irwin v. Dixon, et al.,* 9 *How.* 10, 13 *L. Ed.* 25. It would be a reproach to the law if it compelled one to endure the continuance of what appears for the moment to be an offensive nuisance during all the time that the issue of fact was being brought to a determination before a jury.

The restraining order will issue solely on the ground of the existence of disturbing noises. Whether dirt and disease germs are occasioned by the defendants so as to create a nuisance, is not now sufficiently shown.

The restraining order should enjoin the defendants until further order of the court from using the open area as a place for the storage of trucks so long as the same are being actively used in connection with their or either of their businesses. This may seem too broad. But I do not at present see how the trucks can be taken in and out of the area in question in connection with any business operations without causing the offensive conditions which now ap-

pear to exist. If the defendants should care to place their trucks in the open area on what is called dead storage, they would not offend against the suggested order.

The order will become effective after one week from its date so as to give the defendants an opportunity to make other arrangements if they care to do so. Bond will be required in the sum of five hundred dollars. A rule for preliminary injunction will also issue.

Let an order be entered accordingly.